UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JUDICIAL WATCH, INC., | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Civil Action No. 1:16-cv-00449-KBJ |
|  | ) |
| CENTRAL INTELLIGENCE AGENCY | ) |
|  | ) |
| Defendant. | ) |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Central Intelligence Agency ("CIA" or "Defendant") respectfully moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7. The reasons for this Motion are set forth in the Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, the Statement of Material Facts as to which there is No Genuine Issue, and the Declaration of Antoinette B. Shiner (as well as the exhibits thereto). A proposed order is filed concurrently herewith.

DATED this 28th day of June, 2016.    Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director
U.S. Department of Justice
Civil Division, Federal Programs Branch

 /s/ Andrew M. Bernie
ANDREW M. BERNIE (DC BAR# 995376)
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Telephone:  (202) 616-8488
Fax:  (202) 616-8470
E-mail:  andrew.m.bernie@usdoj.gov
*Counsel for Defendant*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:16-cv-00449-KBJ |
| ) | |
| CENTRAL INTELLIGENCE AGENCY ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS**
**AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Local Rule 7(h)(1), Defendant the Central Intelligence Agency ("CIA" or "Defendant") respectfully submits the following statement of material facts as to which there is no genuine issue:

1. In a letter dated June 15, 2015, Judicial Watch submitted a FOIA request to the CIA (the "FOIA Request" or the "Request"). The FOIA Request sought:

   (1) All pornographic material collected during and/or after the U.S. military operation in Abbottabad, Pakistan on or about May 1, 2011 that killed Osama bin Laden; and (2) A catalogue or index of all pornographic material collected during and/or after the U.S. military operation in Abbottabad, Pakistan on or about May 1, 201 l that killed Osama bin Laden.

Declaration of Antoinette Shiner ("Shiner Decl." or "Shiner Declaration") ¶ 6 & Ex. A.

2. The CIA acknowledged receipt of the FOIA Request in a letter to Judicial Watch dated July 6, 2015, and assigned it reference number F-2015-01977. Shiner Decl. ¶ 7 & Ex. B.

3. In a letter to Judicial Watch dated December 14, 2015, the CIA issued its final response to the FOIA Request. Shiner Decl. ¶ 8 & Ex. C. That letter explained that "responsive records, should they exist, would be contained in operational files" and further noted that "[t]he CIA Information Act, 50 U.S.C. § 3141, as amended, exempts CIA operational files from the search, review, publication, and disclosure requirements of the FOIA." *Id.*

4. FOIA requests that are submitted to the CIA are sent to the CIA's Information Management Services office ("IMS"), whose professionals analyze the request and determine which CIA offices or directorates reasonably might be expected to possess responsive records. Shiner Decl. ¶ 10.

5. The Information Review Officer ("IRO") for each office or directorate identified by IMS in turn conducts a search or, where appropriate, requests the components within that office or directorate that might reasonably to be expected to possess responsive records to conduct a search of their non-exempt repositories. Shiner Decl. ¶ 10.

6. The CIA's records are decentralized and compartmented because of the security and counterintelligence risks faced by the CIA. Shiner Decl. ¶ 10 & n.1.

7. Each IRO or component directed to search therefore must develop their own search strategy, such as identifying appropriate records systems and determining what search tools and terms to use. Shiner Decl. ¶ 10.

8. Given the nature of the FOIA Request, IMS determined that the following directorates or offices were the directorates or offices reasonably likely to have records responsive to the Request: the Directorate of Operations, the Directorate of Analysis, the Office of the Director of the CIA, the Office of Inspector General, the Office of Congressional Affairs, the Office of Public Affairs, and the Office of General Counsel. Shiner Decl. ¶ 11.

9. These directorates or offices conducted a search of their non-exempt records repositories, including electronic database systems, using a variety of search terms. Shiner Decl. ¶ 12. The details and parameters of that search are further explained in the Shiner Declaration. *Id.*

10. These directorates and offices did not locate any records responsive to the FOIA Request. Shiner Decl. ¶ 12.

11. The CIA determined that the requested information did not fall within the scope of any exception that would warrant a search of its operational files. As such, the CIA did not search its operational files in response to Plaintiff's request. Shiner Decl. ¶ 13.

DATED this 28th day of June, 2016.    Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director
U.S. Department of Justice
Civil Division, Federal Programs Branch

 */s/ Andrew M. Bernie*
ANDREW M. BERNIE (DC BAR# 995376)
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Telephone:  (202) 616-8488
Fax:  (202) 616-8470
E-mail:  andrew.m.bernie@usdoj.gov
*Counsel for Defendant*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JUDICIAL WATCH, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:16-cv-00449-KBJ |
| ) | |
| CENTRAL INTELLIGENCE AGENCY ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this Freedom of Information Act ("FOIA") action, Plaintiff Judicial Watch seeks disclosure of pornographic material allegedly collected in the 2011 U.S. military operation that killed Osama Bin Laden. *See* ECF No. 1 ("Compl.") ¶ 5. It is hard to imagine how dissemination of pornographic materials allegedly seized during the Bin Laden raid could inform the public in any meaningful way about what the United States government is up to—the core, animating purpose of FOIA—much less advance Judicial Watch's professed mission "to promote transparency, accountability, and integrity in government and fidelity to the rule of law." *Id.* ¶ 3.

Nonetheless, the Central Intelligence Agency ("CIA") processed Judicial Watch's request. It informed Judicial Watch that responsive records, if any, would be contained in operational files, and that the CIA Information Act exempts the CIA's operational files from FOIA's search and disclosure requirements. As explained further below, the CIA is entitled to summary judgment on this basis. The CIA conducted a thorough search of its non-operational files and found no responsive records. Based on that search as well as the agency's general familiarity with the location of items seized during the 2011 raid (an important event in the CIA's history), the CIA properly concluded that any records responsive to Judicial Watch's FOIA request would be contained within operational files that are exempt from search and disclosure under FOIA. The CIA thus respectfully requests that the Court enter summary judgment in favor of the CIA.

**BACKGROUND**

In a letter dated June 15, 2015, Judicial Watch submitted a FOIA request to the CIA seeking:

> (1) All pornographic material collected during and/or after the U.S. military operation in Abbottabad, Pakistan on or about May 1, 2011 that killed Osama bin Laden; and (2) A catalogue or index of all pornographic material collected during and/or after the U.S. military operation in Abbottabad, Pakistan on or about May 1, 201l that killed Osama bin Laden.

Declaration of Antoinette B. Shiner ("Shiner Decl." or "Shiner Declaration") ¶ 6 & Ex. A (the "FOIA Request" or the "Request").

The CIA acknowledged receipt of the FOIA Request in a letter to Judicial Watch dated July 6, 2015, and assigned it reference number F-2015-01977. Shiner Decl. ¶ 7 & Ex. B. In a second letter to Judicial Watch dated December 14, 2015, the CIA issued its final response to the FOIA Request. *Id.* ¶ 8 & Ex. C. That letter explained that "responsive records, should they exist, would be contained in operational files" and noted that "[t]he CIA Information Act, 50 U.S.C. § 3141, as amended, exempts CIA operational files from the search, review, publication, and disclosure requirements of the FOIA." *Id.*

On March 7, 2016, Judicial Watch filed this action. *See* Compl. The Complaint asserts a violation of FOIA for wrongful withholding of records and requests, inter alia, an order mandating that the CIA conduct searches for any and all responsive records, that the CIA be required to produce all non-exempt records along with a *Vaughn* index, injunctive relief, and attorney's fees. *See id.* ¶¶ 11-13 & Prayer for Relief.

The Complaint does not mention the CIA's December 14, 2015 final response, and Judicial Watch incorrectly asserts that, as of the date the Complaint was filed, the CIA had failed to, among other things, determine whether to comply with the Request or notify Plaintiff of any

2

such determination. Compl. ¶ 9. Based on the parties' meet and confer discussions, it is the CIA's understanding that Judicial Watch may have overlooked that letter. But although Judicial Watch did not administratively appeal the CIA's response, the CIA has informed Judicial Watch that the agency is willing to proceed with this litigation without requiring further administrative procedures.

## ARGUMENT

### I.   Legal Standard

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Judicial Watch, Inc. v. HUD*, 20 F. Supp. 3d 247, 253 (D.D.C. 2014) (citation omitted); *see also Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011) ("[T]he vast majority of FOIA cases can be resolved on summary judgment."). A court reviews an agency's response to a FOIA request *de novo*. 5 U.S.C. § 552(a)(4)(B). "The defendant in a FOIA case must show that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information." *Light v. DOJ*, 968 F. Supp. 2d 11, 23 (D.D.C. 2013).

### II.  The CIA Operational Files Exemption

The CIA Information Act, 50 U.S.C. § 3141 (formerly 50 U.S.C. § 431), generally exempts CIA operational files from the search, review, publication, and disclosure requirements of the FOIA. 50 U.S.C. § 3141(a); *see also Sullivan v. C.I.A.*, 992 F.2d 1249, 1251 (1st Cir. 1993) (noting that "[t]he Information Act . . . excus[es] the CIA from searching its operational files in response to most FOIA requests"). The statute defines operational files as, inter alia, "files of the National Clandestine Service which document the conduct of foreign intelligence or

3

counterintelligence operations or intelligence or security liaison arrangements or information exchanges with foreign governments or their intelligence or security services." 50 U.S.C. § 3141(b)(1). The Act provides an exception to the exemption for operational files for information concerning (1) searches by individuals for information on themselves, (2) searches for information on special activities, or (3) searches for information on the subject of an investigation of impropriety in the conduct of an intelligence activity. *Id.* § 3141(c); *see also Sullivan*, 992 F.2d at 1252 ("[T]he statutory exceptions are for first-party requests, special activity requests, and requests that focus on investigations of improprieties in intelligence-gathering activities."). As noted above and explained further below, the CIA determined that "responsive records, should they exist, would be contained in operational files," Shiner Decl. Ex. C, and that none of the three exceptions applied, *see* p. 7, *infra*.

### III. The CIA Conducted an Adequate Search for Responsive Records in its Non-Operational Record Repositories and Located No Responsive Records

A defendant agency is entitled to summary judgment in a FOIA case with respect to the adequacy of its search if the agency shows "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "There is no requirement that an agency search every record system." *Id.* "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). An agency can establish the reasonableness of its search by "reasonably detailed, nonconclusory affidavits describing its efforts." *Baker & Hostetler LLP v. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006). The process of conducting a reasonable search requires "both systemic and case-specific exercises of discretion and

administrative judgment and expertise" and "is hardly an area in which the courts should attempt to micro manage the executive branch." *Schrecker v. U.S. Dep't of Justice,* 349 F.3d 657, 662 (D.C. Cir. 2003) (citations omitted). Therefore, in evaluating the adequacy of a search, courts accord agency affidavits "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted).

The Shiner Declaration demonstrates that the CIA conducted an adequate search for records responsive to the FOIA Request in its non-operational files. As a threshold matter, Judicial Watch seeks records allegedly seized during the 2011 Bin Laden raid, "an important event in the history of the CIA and the fight against terrorism." Shiner Decl. ¶ 13. In determining where in its non-operational files responsive records might be located, the CIA was not operating on a blank slate. Rather, because of the raid's extraordinary importance, responsible "officials are generally familiar with the location of items seized during the 1 May 2011 raid in Abbottabad that resulted in the death of Osama bin Laden." *Id.*

As the Shiner Declaration explains, FOIA requests that are submitted to the CIA are sent to the CIA's Information Management Services office ("IMS"), whose professionals analyze the request and determine which CIA directorates and offices reasonably might be expected to possess responsive records. Shiner Decl. ¶ 10. The Information Review Officer ("IRO") for each such directorate or office in turn conducts a search or, where appropriate, requests the components within that directorate or office that might reasonably to be expected to possess responsive records to conduct a search of their non-exempt repositories. *Id.* Since the CIA's records are decentralized and compartmented because of the security and counterintelligence risks faced by the CIA, each IRO or component directed to search necessarily must develop its

own search strategy, such as identifying appropriate records systems and determining what search tools and terms to use. *Id.* ¶ 10 & n.1.

In this case, IMS identified seven such directorates or offices: the Directorate of Operations,[1] the Directorate of Analysis,[2] the Office of the Director of the CIA, the Office of Inspector General, the Office of Congressional Affairs, the Office of Public Affairs, and the Office of General Counsel. Shiner Decl. ¶ 11. IMS targeted these seven components for search "because of their awareness of or involvement in matters related to the raid." *Id.*

For each of these seven offices or directorates, IMS personnel—in conjunction with IROs—"identified the specific databases and files subject to FOIA that were likely to contain responsive records and conducted a search that was reasonably calculated to discover any records responsive to Plaintiff's requests for information." Shiner Decl. ¶ 12. Each of the CIA officers who conducted searches of a particular office or component had access to the relevant records, were qualified to search them, and "regularly search those records in the course of their professional duties." *Id.* ¶ 10. The searches included searches of electronic database systems using a combination of keywords. *Id.* ¶ 12. Upon conducting that search, the CIA located no records responsive to the Request within its non-operational files. *Id.*

By targeting the non-exempt record repositories reasonably likely to have records responsive to Plaintiff's request, utilizing its IMS personnel and IROs to identify the specific databases and files subject to FOIA that were likely to have responsive records, and conducting searches of non-exempt files within the identified components, the CIA employed an adequate

---

[1] The Directorate of Operations is "responsible for the clandestine collection of foreign intelligence from human sources, covert action, and paramilitary operations." Shiner Decl. ¶ 11.

[2] The Directorate of Analysis is "responsible for analyzing, interpreting, and forecasting foreign intelligence issues and world events of importance to the United States, and produces finished intelligence reports for dissemination to U.S. Government policymakers." Shiner Decl. ¶ 11.

search "using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68 (citations omitted). This activity is all described in the Shiner Declaration, which is "relatively detailed and nonconclusory and submitted in good faith." *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). Accordingly, the CIA's search was adequate.

### IV. The CIA Was Not Required to Search—or Release Records Contained in—its Operational Files

As noted above, the CIA responded to the FOIA Request by explaining that "responsive records, should they exist, would be contained in operational files" and further noted that "[t]he CIA Information Act, 50 U.S.C. § 3141, as amended, exempts CIA operational files from the search, review, publication, and disclosure requirements of the FOIA." Shiner Decl. ¶ 8 & Ex. C. The CIA did not search its operational files in response to the FOIA Request or otherwise include them in its processing of the Request because those files are exempt from FOIA's search and disclosure requirements. *Id.* ¶ 13; 50 U.S.C. § 3141; *see also* p. 4, *supra*.

Judicial Watch has not specifically addressed the CIA's invocation of the operational files exemption and, because of the somewhat unusual procedural posture of this case—as noted above, Judicial Watch did not administratively appeal the CIA's final response to the FOIA Request—it is not clear whether Judicial Watch is challenging that exemption in this case. As noted above, the CIA Information Act, 50 U.S.C. § 3141, exempts certain CIA operational files from the search, review, publication, and disclosure requirements of the FOIA. 50 U.S.C. § 3141(a); Shiner Decl. ¶ 13. The agency determined that none of the information requested in the FOIA Request fell within the scope of an exception that would warrant a search of exempted operational files. *See* Shiner Decl. ¶ 13; *see also* 50 U.S.C. § 3141(c). Therefore, the CIA is entitled to summary judgment on this issue.

## CONCLUSION

For the above reasons, this Court should grant the CIA's motion for summary judgment.

DATED this 28th day of June, 2016.  Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director
U.S. Department of Justice
Civil Division, Federal Programs Branch

 */s/ Andrew M. Bernie*
ANDREW M. BERNIE (DC BAR# 995376)
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Telephone:  (202) 616-8488
Fax:  (202) 616-8470
E-mail:  andrew.m.bernie@usdoj.gov
*Counsel for Defendant*