# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

JUDICIAL WATCH, INC.,

    Plaintiff,

v.

CENTRAL INTELLIGENCE AGENCY,

    Defendant.

</td><td>

)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)

</td><td>

No. 16-cv-449 (KBJ)

</td></tr>
</table>

## MEMORANDUM OPINION

On May 1, 2011, President Barack Obama announced that American forces had killed Osama bin Laden, the leader of the notorious al-Qaeda terrorist network, during an operation launched against bin Laden's residential compound in Abbottabad, Pakistan.[1]  Over the following days and weeks, the United States government reviewed the digital and hardcopy materials that had been retrieved from the compound, and approximately two weeks after the raid, the press reported that an extensive collection of pornography was among the seized materials.[2]  The instant case concerns a request that Plaintiff Judicial Watch—"a not-for-profit, educational organization incorporated under the laws of the District of Columbia" (Compl., ECF No. 1, ¶ 3)—submitted to the Central Intelligence Agency ("CIA" or "the agency") under the Freedom of Information

---

[1] *See* Tr. of President Obama's May 1, 2011, Remarks on Osama bin Laden, https://obamawhitehouse.archives.gov/blog/2011/05/02/osama-bin-laden-dead (last visited April 18, 2018).

[2] *See, e.g.*, Mark Hosenball & Tabassum Zakaria, *Pornography found in bin Laden hideout: officials*, Reuters, May 13, 2011.

Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, seeking disclosure of those pornographic materials (*see* Compl. ¶ 5).

In response to Judicial Watch's FOIA request, the CIA informed Judicial Watch that no responsive documents had been located in the agency's non-exempt records repositories, and that, to the extent that any responsive records exist, such records likely would be contained in the agency's "operational files," which are exempted from the FOIA's search, review, publication, and disclosure requirements under the CIA Information Act, 50 U.S.C. § 3141 (formerly codified at 50 U.S.C. § 431). (*See* Def.'s Statement of Material Facts ("Def.'s Statement"), ECF No. 9, ¶¶ 3, 8–11.) Judicial Watch has pursued the instant action based on its contention that the CIA has misclassified the requested materials as exempted "operational files," and thus, has improperly withheld them. (*See* Pl.'s Cross-Mot. for Summ. J. ("Pl.'s Cross-Mot."), ECF No. 11, at 2 ("The only issue before the Court is whether Defendant is properly withholding pornographic material collected during a U.S. military operation or an index of that material pursuant to the 'operational files exemption.'").)[3] Judicial Watch also argues that, even if the operational files exemption applies, the records fit into the "special activity" exception to the exemption, such that the records are not protected and this Court must order them produced. (*See id.* at 7–10.)

Before this Court at present are the parties' cross-motions for summary judgment. (*See* Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 9; Pl.'s Cross-Mot.) On March 31, 2018, this Court issued an Order that **GRANTED** the CIA's motion for

---

[3] Page-number citations to the documents that the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

summary judgment and **DENIED** Judicial Watch's cross-motion for summary judgment.
(*See* Order, ECF No. 22.)  This Memorandum Opinion explains the reasons for that
Order.  In short, the Court has concluded that the CIA adequately "demonstrat[ed] . . .
by sworn written submission that" the files at issue in this case have been properly
designated as "exempted operational files[,]" 50 U.S.C. § 3141(f)(4)(A), and that even
if the bin Laden raid qualifies as a "special activity" for the purpose of the CIA
Information Act, *id.* § 3141(c)(2), the special activity exception to the operational files
exemption is inapposite, because the requested pornographic materials do not constitute
"information concerning" that special activity, *id.* § 3141(c), as the special activity
exception requires.

I.      **BACKGROUND**

      A.      **The Operational Files Exemption To The CIA's FOIA Responsibilities**

      First enacted in 1966, "[the] FOIA is often explained as a means for citizens to
know what their Government is up to."  *Nat'l Archives & Records Admin. v. Favish*,
541 U.S. 157, 171 (2004) (internal quotation marks and citation omitted).  Congress
drastically altered the manner in which the FOIA applies to the CIA in 1984, when it
enacted the CIA Information Act, 50 U.S.C. § 3141, which authorizes "[t]he Director of
the [CIA], with the coordination of the Director of National Intelligence, [to] exempt
operational files of the [CIA] from the provisions of [the FOIA] which require
publication or disclosure, or search or review in connection therewith."  *Id.* § 3141(a).
The exemptible "operational files" are specifically defined categories of sensitive
information within the possession of certain sub-agencies of the CIA; namely, the
National Clandestine Service, the Directorate for Science and Technology, and the

Office of Personnel Security.  *See id.* § 3141(b); *see also Morley v. CIA*, 508 F.3d 1108,

1116 (D.C. Cir. 2007) ("Operational files are exempt from FOIA disclosure under the

CIA Act, and generally include records which document the conduct of foreign

intelligence or counterintelligence operations[.]" (internal quotation marks and citation

omitted)); *Sullivan v. CIA*, 992 F.2d 1249, 1251 (1st Cir. 1993) ("Operational files [are]

files that memorialize the conduct and means of the government's foreign intelligence

and counterintelligence efforts[.]").  According to the CIA, the operational files at issue

here are "files of the National Clandestine Service which document the conduct of

foreign intelligence or counterintelligence operations or intelligence or security liaison

arrangements or information exchanges with foreign governments or their intelligence

or security services[.]"  50 U.S.C. § 3141(b)(1).[4]

Prior to the passage of the CIA Information Act, the FOIA's search, review,

publication, and disclosure requirements applied to the CIA in the same way as other

federal agencies.  But the "time-consuming process of reviewing sensitive CIA

operational records" had "create[d] a bottleneck" and "caus[ed] a two-to-three year

delay in CIA responses to many FOIA requests."  H.R. REP. NO. 98-726, pt. 1, at 5

(1984) (hereinafter "H.R. Rep.").  As a result, Congress sought to tailor the application

of the FOIA to the CIA in a way that substantially reduced the "expenditure of time and

money on fruitless search and review of sensitive operational records [which]

contribute[d] nothing to the FOIA goal of releasing non-exempt information to the

---

[4] The CIA Information Act's "operational files" definition also pertains to two other categories of files, neither of which are at issue in this case.  *See* 50 U.S.C. § 3141(b)(2)–(3) (addressing "files of the Directorate for Science and Technology which document the means by which foreign intelligence or counterintelligence is collected through scientific and technical systems" and "files of the Office of Personnel Security which document investigations conducted to determine the suitability of potential foreign intelligence or counterintelligence sources").

4

public[.]" *Id.*; *see also id.* at 4 (recognizing that the purpose of the exemption was "to relieve the [CIA] from an unproductive [FOIA] requirement to search and review certain CIA operational files consisting of research and . . . records which, after line-by-line security review, almost invariably prove not to be releasable under the FOIA"); S. Rᴇᴘ. Nᴏ. 98-305, at 1 (1983) (hereinafter "S. Rep.") ("The purpose of [the Act] is to relieve the [CIA] from undue burdens of searching and reviewing certain operational files for information in response to [FOIA] requests and thereby enable the Agency to respond to other requests under [FOIA] in a more timely and efficient manner.").

Consistent with this goal, the CIA Information Act makes clear that the agency need not even *search* its exempted operational files for requested information. *See* 50 U.S.C. § 3141(a). This sets the operational files exemption apart from the other FOIA exemptions, *see, e.g.*, 5 U.S.C. § 552(b)(1)–(9), which generally require agencies to, first, search their records in order to locate responsive documents, then make a determination as to whether an exemption applies, and ultimately produce "[a]ny reasonably segregable portion of a [requested] record . . . after deletion of the portions which are exempt[,]" *id.* § 552(b). And not only does the operational files exemption "eliminat[e] the waste of CIA human and fiscal resources" required to search for and examine sensitive materials, it also "reduc[es] the possibility of accidental administrative disclosure of sensitive CIA operational secrets[,]" and "provid[es] additional assurance to CIA intelligence sources that public access to government files under [the FOIA] poses no risk to the confidentiality of their relationship with the United States government." H.R. Rep. at 5–6.

Notably, although Congress has exempted all of the CIA's operational files from the requirements of the FOIA on a categorical basis, it also "recognized that, within the spirit of what Congress intended [the] FOIA to do for the American people, the Agency does possess information which the public may legitimately inquire about." S. Rep. at 12. To this end, three categories of information that involve a particularly heightened public interest are expressly carved out as exceptions to the operational files exemption. *See* H.R. Rep. at 23 (explaining Congress's belief that certain types of information "deserve special treatment because of the important interests they involve"); *see also Sullivan*, 992 F.2d at 1251–52 (noting that "Congress carefully carved out [these] three areas" in recognition of the potentially "highly informative" nature of certain operational files). Section 3141(c) of Title 50, which is entitled "Search and review for information[,]" states:

> Notwithstanding subsection (a) of this section, exempted operational files shall continue to be subject to search and review for information concerning—
>
> (1) United States citizens or aliens lawfully admitted for permanent residence who have requested information on themselves pursuant to the provisions of section 552 of Title 5 (Freedom of Information Act) or section 552a of Title 5 (Privacy Act of 1974);
>
> (2) any special activity the existence of which is not exempt from disclosure under the provisions of section 552 of Title 5 (Freedom of Information Act); or
>
> (3) the specific subject matter of an investigation by [specified legislative or executive agency bodies] for any impropriety, or violation of law, Executive order, or Presidential directive, in the conduct of an intelligence activity.

50 U.S.C. § 3141(c)(1)–(3). Procedurally, requests for these three categories of information are "processed in accordance with [the FOIA] in the same manner as if [the operational files exemption] were never enacted." H.R. Rep. at 23.

## B.     Underlying Facts

The following facts are not in dispute.  On June 15, 2015, Judicial Watch

submitted the FOIA request that is the subject of this case to the CIA.  (*See* Def.'s

Statement ¶ 1.)  The FOIA request specifically sought:

> (1)     All pornographic material collected during and/or after the U.S.
> military operation in Abbottabad, Pakistan on or about May 1,
> 2011[,] that killed Osama bin Laden; and

> (2)     [a] catalogue or index of all pornographic material collected during
> and/or after the [operation].

(*Id.* (citations omitted).)  On July 6, 2015, the CIA acknowledged receipt of the FOIA

request and assigned it a reference number.  (*See id.* ¶ 2.)

In reviewing Judicial Watch's FOIA request, the CIA's Information Management

Services Office determined that the following offices or directorates were reasonably

likely to have responsive records:  the Directorate of Operations, the Directorate of

Analysis, the Office of the Director of the CIA, the Office of Inspector General, the

Office of Congressional Affairs, the Office of Public Affairs, and the Office of General

Counsel.  (*See id.* ¶ 8.)  The identified offices and directorates then conducted a search

of their non-exempt, non-operational records repositories, but did not locate any records

that were responsive to the FOIA request.  (*See id.* ¶¶ 9–10.)  The CIA further

determined that the requested information did not fall within the scope of any exception

that would warrant a search of its exempted operational files, and, consequently, the

agency did not search any of its operational files for responsive records.  (*See id.* ¶ 11.)

On December 14, 2015, the CIA issued its final response to the FOIA request,

informing Judicial Watch that "responsive records, should they exist, would be

contained in operational files[,]" which are "exempt[ed] . . . from the search, review,

publication, and disclosure requirements of the FOIA" under "[t]he CIA Information Act, 50 U.S.C. § 3141, as amended[.]" (*Id.* ¶ 3.)

### C.    Procedural History

Judicial Watch either never received, or overlooked, the CIA's response. (*See* Def.'s Mot. at 8–9.) Thus, Judicial Watch filed the instant complaint on March 7, 2016, alleging that the agency had failed to say whether or not it would comply with the FOIA request, and had not produced the requested records or otherwise demonstrated that the records were exempt from production. (*See* Compl. ¶ 9.) Accordingly, Judicial Watch's complaint alleged that the CIA had violated the FOIA by failing to respond timely to the FOIA request, and asked the Court to compel the CIA to produce the requested records. (*See id.* ¶¶ 11–13.)

Judicial Watch first became aware of the CIA's December 2015 response letter during the parties' subsequent meet and confer discussions. (*See* Def.'s Mot. at 8–9.) The CIA subsequently "informed Judicial Watch that the agency [was] willing to proceed with this litigation without requiring further administrative procedures." (*Id.* at 9; *see also* Pl.'s Reply in Supp. of Cross-Mot. for Summ. J. ("Pl.'s Reply"), ECF No. 15, at 3 n.3.) Thus, the complaint's timeliness allegations are not at issue, nor does Judicial Watch challenge the adequacy of the CIA's search of its non-exempt repositories. (*See* Pl.'s Cross-Mot. at 4 n.1.) Instead, as framed by the parties in the context of their summary judgment motions, the issues before this Court at present are: (1) whether the files that apparently house the requested pornographic materials properly constitute "operational files" and thus are exempted from the search and review requirements of the FOIA, and (2) whether, even if the operational files

exemption applies, the requested materials fit within the "special activity" exception to the exemption as set forth in 50 U.S.C. § 3141(c)(2).  (*See id.* at 2.)

The CIA filed its motion for summary judgment on June 28, 2016.  (*See* Def.'s Mot.)  Included with the motion was a declaration of Antoinette Shiner, who is the Information Review Officer for the CIA's Litigation Information Review Office.  (*See* Decl. of Antoinette Shiner, ECF No. 9-1.)  In response to the CIA's motion, Judicial Watch filed a cross-motion for summary judgment (*see* Pl.'s Cross-Mot.), and the CIA followed with a combined opposition and reply brief in support of its own motion for summary judgment (*see* Def.'s Combined Opp'n and Reply ("Def.'s Reply"), ECF No. 13), which was accompanied by a second declaration from Shiner (*see* Decl. of Antoinette Shiner ("Second Shiner Decl."), ECF No. 13-1).  At that same time, the CIA also provided notice that it was lodging a classified declaration in support of its motion for summary judgment, which was made available for this Court's *in camera*, *ex parte* review.  (*See* Notice of Lodging of Classified *In Camera Ex Parte* Decl. ("Notice of Classified Shiner Decl."), ECF No. 14.)  Finally, after Judicial Watch filed its reply brief in support of its cross-motion (*see* Pl.'s Reply), the CIA filed yet another supplemental declaration from Shiner, on October 3, 2016.  (*See* Decl. of Antoinette Shiner, ECF No. 18.)  This Court heard the parties' arguments on the cross-motions for summary judgment during a motion hearing held on June 22, 2017, and both motions are ripe for this Court's review.  During the hearing, the Court denied Judicial Watch's motion to strike Shiner's October 3, 2016, supplemental declaration.  (*See* Hr'g Tr. at 38:6–7; Pl.'s Mot. to Strike, ECF No. 17, at 1 (arguing that the supplemental declaration "is not made on personal knowledge, does not contain facts, and is nothing

more than a surreply disguised as a declaration"); Def.'s Mem. in Opp'n to Pl.'s Mot. to Strike, ECF No. 19, at 4–5 (countering that, at most, Judicial Watch's arguments go to the weight the Court should give the supplemental declaration).)[5] For the purpose of the ruling that this Memorandum Opinion describes, the Court has not relied on Shiner's supplemental declaration at all.

## II.   LEGAL STANDARDS

### A.   Summary Judgment In The FOIA Context

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Judicial Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d 131, 136 (D.D.C. 2014) (quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). A district court reviewing a motion for summary judgment in the FOIA context conducts a de novo review of the record, *see* 5 U.S.C. § 552(a)(4)(B), analyzing all underlying facts and inferences in the light most favorable to the FOIA requester, *see Willis v. DOJ*, 581 F. Supp. 2d 57, 65 (D.D.C. 2008). Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

If the defendant agency contends that it is entitled to withhold information under a FOIA exemption, the agency "bears the burden of proving the applicability of [the] claimed exemptions." *Am. Civil Liberties Union v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). To carry this burden, the agency "must submit sufficiently detailed affidavits or declarations, a Vaughn index of the withheld documents, or both," in order

---

[5] Citations to the hearing transcript refer to an unofficial version of the transcript.

to, among other things, "enable the court to fulfill its duty of ruling on the applicability of the exemption[.]" *Looks Filmproduktionen GmbH v. CIA*, 199 F. Supp. 3d 153, 162–63 (D.D.C. 2016). Such declarations are entitled to a presumption of good faith, and the court can award the agency summary judgment based solely on the information so provided. *See Hedrick v. FBI*, 216 F. Supp. 3d 84, 94–95 (D.D.C. 2016). However, to be sufficient to support a summary judgment motion, the agency's declarations must describe "the justifications for nondisclosure with reasonably specific detail, [and] demonstrate that the information withheld logically falls within the claimed exemption," and must not be "controverted by either contrary evidence in the record []or by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

## B. Judicial Review Of A Claim That The CIA Has Improperly Invoked The Operational Files Exemption

The CIA Information Act expressly authorizes two avenues of attack for a plaintiff seeking to challenge the CIA's invocation of the operational files exemption. First of all, a plaintiff can "allege[] that requested records were improperly withheld because of improper *placement* solely in exempted operational files[.]" 50 U.S.C. § 3141(f)(3) (emphasis added). The second path permits a plaintiff to maintain "that requested records were improperly withheld because of [the CIA's] improper *exemption* of operational files[.]" *Id.* § 3141(f)(4)(A) (emphasis added); *see also* Karen A. Winchester & James W. Zirkle, *Freedom of Information and the CIA Information Act*, 21 U. Rich. L. Rev. 231, 289 (1987) (comparing allegations of improper placement and improper exemption). This second challenge—which is the only operational files-related argument that Judicial Watch makes in the instant case (*see* Pl.'s Cross-Mot. at

4–7; Pl.'s Reply at 2–4)—does not involve a dispute over the propriety of the agency's decision to put the requested records into properly exempted files; rather, a plaintiff who proceeds under section 3141(f)(4) contends that the files themselves have been improperly designated as "operational" files, and thus, inappropriately exempted from the FOIA.[6]

In reviewing a challenge to the CIA's assertion of the operational files exemption, Congress has made clear that courts should, "to the fullest extent practicable, determine issues of fact based on sworn written submissions of the parties[.]" 50 U.S.C. § 3141(f)(2). Moreover, by statute, judicial review is available for a challenge brought under section 3141(f)(4) only if the parties satisfy specific procedural requirements. As a first step, the CIA has the burden of "demonstrating to the court by sworn written submission that exempted operational files likely to contain responsive records currently perform the functions" of "operational files" as defined in the CIA Information Act. *Id.* § 3141(f)(4)(A); *see also id.* § 3141(b) (defining the three categories of exempted "operational files"). Then, only if the complainant "disputes the [CIA's] showing with a sworn written submission based on personal knowledge or otherwise admissible evidence" can the court proceed to order the CIA "to review the

---

[6] Neither the complaint nor any of Judicial Watch's filings in this case make an improper-placement-of-records argument under section 3141(f)(3), and when pressed about an attempt to inject an (f)(3) contention into this matter during the Court's hearing, Judicial Watch's counsel acknowledged that Plaintiff had not alleged that the requested pornographic materials have been "improperly withheld because of improper *placement* solely in exempted operational files[.]" 50 U.S.C. § 3141(f)(3) (emphasis added). (*See* Hr'g Tr. at 23:13–15 (conceding that Judicial Watch "probably agree[d]" that the "focus" of its briefed arguments was on section (f)(4) and not section (f)(3)).) What is more, to date, Judicial Watch has not undertaken to provide "a sworn written submission, based upon personal knowledge or otherwise admissible evidence[,]" as support for any allegation that the requested records were improperly placed within operational files, 50 U.S.C. § 3141(f)(3), even after the CIA specifically noted Judicial Watch's failure to invoke section (f)(3) or to submit the required statement (*see* Def.'s Reply at 11). Accordingly, the Court considers any placement argument under section (f)(3) to be waived, and no such allegation is addressed in this Memorandum Opinion.

content of any exempted operational file or files in order to" support the claimed exemption. *Id.* § 3141(f)(4)(B). Of course, "if the court finds . . . that the [CIA] has improperly withheld requested records because of failure to comply with any provision of [the CIA Information Act]," the court must order the CIA "to search and review the appropriate exempted operational file or files for the requested records and make such records, or portions thereof, available in accordance with the provisions of section 552 of Title 5 (Freedom of Information Act)[.]" *Id.* § 3141(f)(6). Alternatively, "if at any time following the filing of a complaint . . . the [CIA] agrees to search the appropriate exempted operational file or files for the requested records, the court shall dismiss the claim based upon such complaint." *Id.* § 3141(f)(7).

Thus, under section 3141(f)(4), the operational files exemption relieves the CIA of the burden of having to conduct a search in response to a FOIA request if the agency demonstrates by affidavit that its files have been properly classified as exempted operational files and the complainant has no personal knowledge or other evidence of improper classification on the part of the CIA. *See* H.R. Rep. at 35 (explaining that, because "one of the basic purposes of the bill [] is to relieve the CIA of an undue burden of searching and reviewing operational files[,]" the procedural prerequisites to judicial review are designed to ensure that "the CIA will not be forced into the position of searching and reviewing the contents of operational files to defend the lawsuit by a mere allegation of improper exemption of the files, which would be inconsistent with" that basic purpose). And, again, the determination of whether or not the agency has properly designated its files as exempted, or has properly placed the requested records

in such exempted files, is to be determined "based on [the] sworn written submissions of the parties[,]" to "the fullest extent practicable[.]"  50 U.S.C. § 3141(f)(2).

## III.    ANALYSIS

Judicial Watch contends that the CIA has failed to carry its burden of demonstrating that the CIA Information Act's operational files exemption applies.  *See id.* § 3141(f)(4)(A).  (*See also* Pl.'s Cross-Mot. at 4–7; Pl.'s Reply at 2–4.)  It further argues that, regardless, the requested materials fall within the "special activity exception" to the operational files exemption.  *See* 50 U.S.C. § 3141(c)(2).  (*See also* Pl.'s Cross-Mot. at 7–9; Pl.'s Reply at 1–2.)  But the CIA has submitted a series of sworn declarations that, in this Court's view, adequately represent that the files the agency has designated as "operational files" currently perform at least one of the functions that the statute requires in order for a file to qualify as an "operational file." (*See* Second Shiner Decl.)  And this Court also finds that the special activity exception is inapposite under the circumstances presented here, because even assuming *arguendo* that the United States government's raid on bin Laden's compound can properly be characterized as a "special activity" within the meaning of the CIA Information Act, the pornographic materials that Judicial Watch seeks do not constitute "*information concerning*" that special activity, 50 U.S.C. § 3141(c) (emphasis added), as explained below.

### A.    The CIA Has Adequately Demonstrated That The Files Likely To Contain The Requested Pornographic Materials Were Properly Designated As Exempted Operational Files

In response to Judicial Watch's allegation that the "requested records were improperly withheld because of improper exemption of operational files" (Pl.'s Cross-

14

Mot. at 4 (quoting 50 U.S.C. § 3141(f)(4)(A))), the CIA has provided a "sworn written submission" that declares that the "exempted operational files" that are likely to contain the requested pornographic materials "currently perform the functions" of operational files as set forth in the statute (*see generally* Second Shiner Decl.).  The CIA submitted the Second Shiner Declaration along with its reply brief in support of its motion for summary judgment, after it became clear that Judicial Watch was challenging the agency's assertion of the operational files exemption.  (*See* Def.'s Reply at 8 & n.2.) *See also Looks Filmproduktionen GmbH*, 199 F. Supp. 3d at 171 (holding that the CIA's obligation to provide a sworn declaration supporting the exemption was not triggered until the plaintiff alleged that the exemption was improperly asserted).  The CIA has also lodged a classified declaration for the Court's *ex parte*, *in camera* review (*see* Notice of Classified Shiner Decl.); however, this Court agrees with the CIA that "the public record provides a sufficient basis for the Court to enter judgment in Defendant's favor" (Def.'s Reply at 5 n.1).

Specifically, the Second Shiner Declaration expressly affirms that the exempted operational files that the agency believes are likely to contain the records that Judicial Watch requests "are files of the Directorate of Operations that document the conduct of foreign intelligence operations[,]" and as such "currently perform the functions set forth in 50 U.S.C. § 3141(b)[.]"  (Second Shiner Decl. ¶ 10.)  Moreover, Shiner avers that "the processes and procedures for designating and maintaining the Agency's operational files . . . have been followed by the CIA" (*id.*), and her declaration describes, in painstaking detail, the many procedures and safeguards that the CIA has adopted to ensure that the files that have been designated as "operational" (and that are thereby

exempted from the FOIA) actually perform an enumerated statutory function (*see id.* ¶¶ 5–9).

For example, before the agency "designat[es a] specific file series as exempt[,]" the "[Director of the CIA] and his advisers carefully consider whether files falling within each proposed series would perform the functions set forth in the statute." (*Id.* ¶ 5.) The CIA also "maintain[s] the integrity of [its] exempted operational files" through "an Agency-wide regulation that details procedures for designating or eliminating the designation of operational files" (*id.* ¶ 6), and "ensure[s] that the files within each designated category [of exempted operational files] perform the functions outlined in the statute" through "a process for the decennial review of exempted operational files" (*id.* ¶ 7). This process "require[s the agency] to review the designations periodically, but not less than once every 10 years, and make recommendations . . . as to which files or portions thereof no longer require designation as exempt or those that now require a designation as exempt." (*Id.*; *see also id.* ¶ 8 (explaining that the "results of each decennial review of the designations are independently reviewed by an Agency-wide Operational File Validation Team," and describing the procedures governing such independent reviews).) Shiner further describes other file-integrity procedures that the CIA employs, including its requirement of "multiple layers of review before a [specific] document ends up residing in an exempt operational file[,]" and "a document-by-document [review] to confirm that such placement [of a document within an operational file] is appropriate." (*Id.* ¶ 9; *see also id.* (discussing "periodic review audits [that] are conducted to verify that the operational files are being maintained for proper purposes").)

Nevertheless, Judicial Watch maintains that the Second Shiner Declaration "does nothing more than assert that the requested records are properly categorized as an operational file, without providing any justification" (Pl.'s Reply at 3), and it insists that the CIA has "fail[ed] to provide any evidence whatsoever that the requested records are located within files that concern the intelligence process" or that otherwise serve one of the enumerated statutory functions for operational files (*id.* at 4 (internal quotation marks and citation omitted)). It is certainly the case that the CIA must offer "more than conclusory language, recitation of the statutory standard, and vague and sweeping statements which give the Court neither basis to credit the government's assertions nor factual support for essential elements of the operational files exemption." *Inst. for Policy Studies v. CIA*, 124 F. Supp. 3d 1, 3 (D.D.C. 2015), *on reconsideration*, 153 F. Supp. 3d 352 (D.D.C. 2016); *see also Aftergood v. Nat'l Reconnaissance Office*, 441 F. Supp. 2d 37, 44 (D.D.C. 2006) ("[C]ourts should exercise a certain level of caution in reviewing an agency's written statements regarding the content of files for which the defendant claims [the] operational files exemption."). But it is also patently obvious that the agency has easily cleared the required bar here. As explained, the Second Shiner Declaration details the agency's procedures for designating operational files, and for maintaining the files to ensure that designations remain valid over time, and Shiner also avers that those procedures were followed with respect to the particular operational files that are likely to contain the requested pornographic materials. (*See* Second Shiner Decl. ¶¶ 5–10.) Thus, Judicial Watch is wrong to complain that the CIA merely "tells[,]" but does not "show[,]" that the files in which the requested records are likely to reside have been properly designated as "operational[.]" (Pl.'s Reply at 2.)

What is more, the sworn statements from Shiner are themselves sufficient to carry the agency's burden of establishing the applicability of the operational files exemption; the agency need not actually *review* the files that are being described, since Judicial Watch has not made any showing to dispute the agency's contentions about the nature and content of the files. *See* 50 U.S.C. § 3141(f)(4)(B) ("[T]he court may not order the [CIA] to review the content of any exempted operational file or files in order to make the demonstration required . . . unless the complainant [first] disputes the [CIA's] showing with a sworn written submission based on personal knowledge or otherwise admissible evidence[.]").  Indeed, requiring the CIA to reveal more than it already has about the contents of the operational files that Shiner describes would undermine the very exemption that Congress has authorized the CIA to invoke in situations such as this. *See Aftergood*, 441 F. Supp. 2d at 44 ("[I]t would defeat the purpose of [the] operational files exemption to require the defendant to provide a detailed catalogue of the documents it claims to be exempted operational files, as the ostensible aim of [the] exemption is to permit the [agency] to avoid having to search through and review sets of records which do not contain information which must be released under the FOIA."); *see also* H.R. Rep. at 5 (noting that "a decade of experience has shown that certain specifically identifiable CIA operational records systems, containing the most sensitive information directly concerning intelligence sources and methods, inevitably contain" information that cannot be publicly disclosed).

Judicial Watch's additional argument that "the requested [pornographic] records are not operational files[,]" and "do[] not fit any of the[] descriptions" of "operational files" set out in the CIA Information Act (Pl.'s Cross-Mot. at 5; *see also* Pl.'s Reply at

18

4 n.4), is both misplaced and unavailing.  Again, to the extent that Judicial Watch means to challenge the *placement* of the requested records into an exempted operational file under section (f)(3), that argument is waived (*see supra* n.6), and in any event, Judicial Watch has failed to provide the "sworn written submission" that section (f)(3) requires.  *See* 50 U.S.C. § 3141(f)(3).  Furthermore, any argument that the requested pornographic materials do not fit the statute's definition of an "operational file" misunderstands the statute:  a challenge brought under section (f)(4) is a challenge to the designation of *the file in which the requested records are placed* as "operational," and is *not* a challenge to any individual records that are located in that file.  *See* S. Rep. at 20 ("[T]he basis for file designation should be the function of the file, i.e., the purpose for which the file has been established, rather than the specific contents of the file.").  (*See also* Def.'s Reply at 11 ("To invoke the operational files exemption, the CIA need only demonstrate that the exempt *files* perform the enumerated functions, not that each of the *records* allegedly stored within those files performs those functions." (emphasis in original) (citations omitted)).)

The bottom line is this:  the CIA has submitted sworn statements that credibly allege that the operational files at issue "currently perform the functions set forth in 50 U.S.C. § 3141(b)" and have also been "tightly defined to ensure that they serve the specific operational purposes" for which they are designed (Second Shiner Decl. ¶¶ 5, 10), and Judicial Watch has offered nothing to counter these contentions, much less "sworn written submissions based on personal knowledge or other admissible evidence[,]" 50 U.S.C. § 3141(f)(4)(B).  Therefore, this Court finds that the CIA's invocation of the operational files exemption is appropriate.  *See, e.g.*, *Smith v. CIA*,

246 F. Supp. 3d 117, 123 (D.D.C. 2017) (holding that a declaration that appears to be substantially similar to the instant Second Shiner Declaration was sufficient to establish that "[t]he agency's decision not to search [the] files [was] . . . within the CIA Information Act's exemption of operational files as defined in the Act").

## B. The Requested Pornographic Materials Do Not Trigger The Special Activity Exception

In addition to the unavailing argument that the CIA has failed to support its invocation of the operational files exemption, Judicial Watch alternatively maintains that, even if the requested pornographic materials are located in appropriately exempted operational files, the agency must still search for the requested materials, because "[t]he requested records satisfy the 'special activity' exception to the 'operational files exemption.'" (Pl.'s Cross-Mot. at 7.) The so-called "special activity exception" is one of three narrow carve-outs to the operational files exemption that Congress "believe[d] deserve special treatment because of the important interests they involve." H.R. Rep. at 23; *see also* S. Rep. at 15 (approving the special activity exception "in recognition of the public interest in CIA 'special activities' (or covert action operations)"). As explained in Part I.A above, notwithstanding the general exemption of operational files from searches in response to a FOIA request, Congress has required the CIA to search its operational files in accordance with ordinary FOIA procedures if the requester seeks "information concerning" (1) the requester himself, or (2) "any special activity the existence of which is not exempt from disclosure under the provisions of [the FOIA,]" or (3) "the specific subject matter of [certain] investigation[s]" by particular legislative or executive agency bodies. 50 U.S.C. § 3141(c). Here, Judicial Watch vigorously maintains that the requested records satisfy the second of these exceptions, and as a

result, it asserts that the CIA must search for and review the records, even to the extent they are located in otherwise-exempted operational files. (*See* Pl.'s Cross-Mot. at 9.) This Court can—and does—assume *arguendo* that the raid on bin Laden's compound counts as a "special activity" for the purpose of the statutory exception, and even so, it rejects the conclusion that the special activity exception applies under the circumstances presented here.

To begin with, the Court observes that the plain language of section 3141(c)(2) establishes that there are three elements that must each be satisfied to obligate the CIA to search its exempted operational files on the basis of the special activity exception: (1) the operation that is the subject of the FOIA request must be a "special activity"; (2) the existence of the special activity must not be exempt from disclosure under the FOIA; and (3) the materials sought to be disclosed must constitute "information concerning" the special activity. 50 U.S.C. § 3141(c)(2). Understandably, the parties here focus almost exclusively on whether or not the first two elements of the special activity exception are satisfied. (*See, e.g.*, Pl.'s Cross-Mot. at 8–9 (arguing that the raid on bin Laden's compound was "a specific U.S. military operation" that has been "publicly acknowledged" by "U.S. officials"); Def.'s Reply at 12, 14 (maintaining that "the Government has never acknowledged the existence of any special activity in connection with the [b]in Laden raid[,]" and that the raid was not even "a covert action").) *See also Sullivan*, 992 F.2d at 1253 (stating that FOIA requests invoking the special activity exception "must relate to 'a specific covert action operation, such as the Bay of Pigs invasion or the CIA's role in [the] replacement of the [President Jacobo Arbenz] Guatemala regime in the 1950s'" (quoting S. Rep. at 24–25)). But the statute

also unambiguously provides that the CIA need only open its exempted operational files to "search and review *for information concerning*" any special activity of the CIA, which, in this Court's view, precludes the application of the exception to require the agency to search for the pornographic materials requested here, even if the other two elements are met.

To be sure, "*concerning*" is a broad and inclusive term that, if considered out of context, could conceivably apply to almost anything, however tangentially related to the matter at issue. *See The American Heritage Dictionary of the English Language, New College Edition* (1976), at 275 (defining "concerning" as "[i]n reference to; regarding"). But the words of a statute must be interpreted in the context in which Congress has presented them, *see Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006), and it is clear to this Court that Congress has required the CIA to relinquish its right to bypass properly designated operational files in response to FOIA requests that relate to its special activities *only* if the FOIA requester is seeking *certain* information—i.e., "information *concerning*" the covert operation at issue. 50 U.S.C. § 3141(c)(2) (emphasis added). Congress has quite rationally carved out this special circumstance, because the CIA is thereby required to provide information pertaining to its own covert activities, consistent with the underlying purpose of the FOIA. *Cf. U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) ("The [FOIA] was . . . designed to pierce the veil of administrative secrecy and to open *agency action* to the light of public scrutiny." (emphasis added) (internal quotation marks and citation omitted)); *DOJ v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 775 (1989) ("[T]he core purpose of the FOIA [is to] contribut[e] significantly to public understanding *of the operations or*

*activities of the government.*" (emphasis in original) (internal quotation marks omitted)).  And this narrow exception also reflects Congress's intent in enacting the CIA Information Act, insofar as this interpretation generally preserves the CIA's ability to avoid time-consuming searches of files that are unlikely to yield producible fruit, on the one hand, while at the same time ensuring that citizens have a meaningful opportunity to gather information about the workings of the agency with respect to covert operations, consistent with the FOIA, on the other.  *Compare* S. Rep. at 1 ("The purpose of [the Act] is to relieve the [CIA] from undue burdens of searching and reviewing certain operational files for information in response to [FOIA] requests[.]"), *with id.* at 12 ("CIA officials have recognized that, within the spirit of what Congress intended FOIA to do for the American people, the Agency does possess information which the public may legitimately inquire about.").  To read the special activity exception more broadly would be to require the CIA to give up its ability to fend off burdensome FOIA requests in pursuit of records that actually do not shed any light on the United States government's role in the planning or execution of a covert intelligence operation, and are, in fact, entirely *incidental* to that operation.  And nothing in the FOIA or the CIA Information Act suggests that Congress intended that result.

A brief analogy elucidates the point.  Without question, the United States government's 1961 invasion of Cuba's Bay of Pigs was a covert action of the CIA at the time that it was executed.[7]  The United States government later publicly acknowledged

---

[7] *See* CIA, The Bay of Pigs Invasion, https://www.cia.gov/news-information/featured-story-archive/2016-featured-story-archive/the-bay-of-pigs-invasion.html (last visited April 18, 2018) (describing the invasion as a "covert operation" that was later publicly exposed); *see also* S. Rep. at

this special activity; thus, the fact that it had occurred was not exempt from disclosure under the FOIA.  If the CIA properly places all of its records concerning the purpose, planning, and execution of the Bay of Pigs invasion in exempted operational files, the special activity exception would plainly require the agency to search those files and produce any non-exempt records if a FOIA requester asked the agency for "information concerning" that covert activity.  But imagine a requester who is not interested in the purpose, planning, or execution of that covert operation, or any other aspect of the United States government's role in carrying out that special activity, and instead seeks to research the lifestyle of Cuban officials at the time.  Such a requester might file a FOIA request asking for the documents and materials that (according to press reports) were collected by CIA-led forces at the scene of the invasion.  In this scenario, the CIA's operation is indisputably the but-for cause of the agency's possession of such materials, and the requested materials concern the United States government's special activity in a general sense, but this Court cannot imagine that Congress intended for the CIA to have to discard the no-search pass that the CIA Information Act affords to the agency with respect to its operational files in order to undertake a search for Fidel Castro's grocery list, or his children's report cards, or any other conceivable item that might have been included among materials the United States government seized during the operation.  And this is especially so given that Congress plainly specified that the FOIA's "search and review" obligations continue with respect to exempted operational files *only* as to "information concerning" three subjects that "deserve special treatment because of the important interests they involve."  H.R. Rep. at 23; *see also* 50 U.S.C.

24–25 (identifying the Bay of Pigs invasion as an example of "a specific covert action operation").

§ 3141(c). Put another way, even if Judicial Watch is correct that the special activity exception is designed to further the public's interest in getting information from the government (*see* Hr'g Tr. at 34:7–10, 34:25–35:12 (noting the public and media have shown an interest in the requested pornographic materials)), and even if Fidel Castro's personal records might be inherently interesting to the public, in this Court's view, the *relevant* public interest for the purpose of circumventing the CIA's special exemption from the FOIA's search and review obligations is the public's interest *in the activities of the United States government*, and *not* the public's freestanding interest in documents and information that reveal something about the preexisting circumstances of the target of the government's covert action.

Thus, in this context, section 3141(c)'s reference to "information concerning" is best construed as meaning "information about." *See* S. Rep. at 41 (additional views of Sens. Durenberger, Huddleston, Inouye, & Leahy) (explaining that "the bill makes no change in public access to releasable information in designated files *about* CIA covert action operations (or 'special activities')"; therefore, "[i]f the fact of the existence of the activity is not exempt from disclosure under the FOIA, the CIA will have to continue to search and review operational files in response to a request for information *about* that operation in accordance with the FOIA" (emphasis added)); *cf.* S. Rep. at 24 (noting the exception ensures "access to files containing information *on* an acknowledged special activity" (emphasis added)). And, here, it cannot be seriously argued that Osama bin Laden's collection of pornographic materials constitutes information *about* the raid of the compound that United States special forces conducted, as Judicial Watch concedes. (*See* Pl.'s Cross-Mot. at 5–6 ("A collection of

pornographic material, albeit from a terrorist, . . . could not possibly document any meaningful conduct relating to foreign intelligence operations[.]").)  In fact, it appears that bin Laden's collection of pornographic materials came into the CIA's custody purely by happenstance, days or weeks after the covert operation itself.  Therefore, far from constituting information *about* the CIA's alleged special activity, the pornographic materials that Judicial Watch has requested pursuant to the FOIA are entirely incidental to it, such that the special activity exception does not apply to divest the CIA of the protection of the operational files exemption.[8]

Thus, this Court concludes that the CIA is entitled to rely on the operational files exemption with respect to Judicial Watch's FOIA request, without regard to the special activity exception, which is inapposite.  The Court also rejects Judicial Watch's suggestion that the CIA's decision to release other materials that were collected during or after the raid precludes its invocation of the operational files exemption over the pornographic materials presently at issue.  (*See* Hr'g Tr. at 34:18–35:5.)  It is well established that the "FOIA is a disclosure statute, and [that] the Government can voluntarily disclose information even if that information is covered by a FOIA

---

[8] Congress's narrowly tailored approach to the exceptions it prescribes is further evident when one considers Congress's intent with respect to the last category of information that is carved out of the operational files exemption.  *See* 50 U.S.C. § 3141(c)(3) (requiring the CIA to search for "information concerning" the "specific subject matter of an investigation").  When discussing this exception, the House observed that "[t]he key requirement *is that information concern the specific subject matter of the investigation, not that the information surfaced in the course of the investigation.*"  H.R. Rep. at 30–31 (emphasis added).  Moreover, it observed that the "tailoring" of the exception through "[t]he specificity requirement" was "intended to avoid the possibility of an unreasonably expansive interpretation of [the exception] to include as subject to search and review information wholly unrelated to any question of illegality or impropriety."  *Id.* at 31.  Although no analogous cabining language appears in section 3141(c)(2), any such limitation would arguably be too narrow to accommodate a search for records pertaining to the purpose, planning, or execution of a special activity of the CIA, and in any event, Congress's view that "an unreasonably expansive interpretation" includes one that requires the CIA to search for information that is "wholly unrelated" to the subject at issue is instructive.

Exemption[,]" *100Reporters LLC v. DOJ*, 307 F.R.D. 269, 278 n.1 (D.D.C. 2014) (citation omitted), which means that "an agency does not forfeit the benefit of a FOIA exemption simply because of its prior decision to voluntarily release other similar information[,]" *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 464 (D.C. Cir. 2014) (discussing the CIA's partial release of information concerning the Bay of Pigs operation); *see also, e.g.*, *Pub. Citizen v. Dep't of State*, 11 F.3d 198, 202 (D.C. Cir. 1993) (observing that an agency's voluntary release of some information about a subject does not forfeit a FOIA exemption over all other information relating to that subject).  Besides, "penalizing agencies [for partial voluntary disclosures] would discourage them from voluntarily releasing information, which would thwart the broader objective of transparent and open government."  *Nat'l Sec. Archive*, 752 F.3d at 464; *see also Pub. Citizen*, 11 F.3d at 203 ("[W]e [are] unwilling to fashion a rule that would require an agency to release all related materials any time it elected to give the public information about a classified matter[, because t]o do so would give the Government a strong disincentive ever to provide its citizenry with briefings of any kind on sensitive topics.").

## IV.    CONCLUSION

In response to Judicial Watch's claims in this action, the CIA has "demonstrat[ed] to the [C]ourt by sworn written submission that [the] exempted operational files [that are] likely to contain responsive records" were properly designated as "operational files."  50 U.S.C. § 3141(f)(4)(A).  Furthermore, because the CIA Information Act accommodates the public's heightened interest in the CIA's "special activities" only insofar as the requester is seeking "information concerning"

27

that activity, *id.* § 3141(c)(2), this Court finds that the special activity exception to the operational files exemption does not require that the agency search for, or produce, requested materials that are wholly incidental to the purpose, planning, or execution of the special activity at issue.  By no means does the collection of pornography recovered from bin Laden's compound qualify as "information concerning" the United States government's raid on bin Laden's compound; consequently, this Court concludes that the special activity exception is inapplicable, regardless of whether the bin Laden operation actually was a special activity of the CIA.  Thus, as reflected in the prior Order, Defendant's motion for summary judgment has been **GRANTED**, Plaintiff's cross-motion for summary judgment has been **DENIED**, and judgment has been entered in Defendant's favor on Plaintiff's sole claim.


DATE:  April 19, 2018                              *Ketanji Brown Jackson*
                                                   KETANJI BROWN JACKSON
                                                   United States District Judge